WR-83,448-01,02,03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/29/2015 5:55:11 PM
Accepted 9/30/2015 10:23:29 AM
ABEL ACOSTA
CLERK

CAUSE NO. WR-83-448-01

CAUSE NO. WR-83-448-02

CAUSE NO. WR-83-448-03

RECEIVED
COURT OF CRIMINAL APPEALS
9/30/2015
ABEL ACOSTA, CLERK

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

**IN THE MATTER OF THE WRITS OF HABEAS
CORPUS FILED BY LYNWYATT ALLEN**

REQUEST FOR LEAVE TO FILE
MOTION FOR COURT TO VACATE ITS
ORDER DENYING WRIT AND REMAND
FOR EVIDENTIARY HEARING
   IN THE ALTERNATIVE REQUEST
FOR COURT TO VACATE ITS ORDER
DENYING APPLICANT'S PETITION
AND REMAND FOR EVIDENTIARY
HEARING **ON ITS OWN MOTION.**

Cause arising out of the 186th District
Court, Bexar County, Texas
The Hon. Jefferson Moore, Presiding

KENNETH ERIC BAKER
SBN #24045439
"Of Counsel" to DiazJakob,
Attorneys L.L.C.
Alamo Towers North
901 N.E. Loop 410
Suite 900
San Antonio, Texas 78209
(210) 226-4500  (p)
(210) 226-4502  (f)

TO THE HONORABLE COURT:

**Relief requested:** Reconsideration or the court's denial of applicant's Habeas Petition's without hearing and remand for an evidentiary hearing.

## Procedural statement of the Case

On March 18th, 2015, Applicant, Lynwyatt Allen, filed an application for a Writ of Habeas Corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure. (Exhibit A,B &C) alleging ineffective assistance of counsel. On March 23rd, 2015 the trial court entered an **Order On Application for Post Conviction Relief** (Exhibit D). The court found that there were controverted issues that "create a necessity for a hearing, but that the matter is capable of resolution by affidavit". The court ordered trial counsel to submit an affidavit confirming or denying the allegations by May 7th, 2015 and further directed that trial counsel serve the undersigned post-conviction counsel with a copy of the affidavit (trial counsel's affidavit attached as exhibit E). Simultaneously the court issued an **Order Designating Issues** (Exhibit F) finding that the issue of ineffective assistance of counsel required resolution. **Trial counsel failed to serve the undersigned counsel until March 20th, 2015** (trial counsel's letter to the undersigned is attached as Exhibit G). 10 days later the court issued an **Order and Conclusions of Law** (Exhibit H) recommending relief be denied based on the statement that trial counsel "sufficiently rebuts all allegations made against him". This court issued an order denying applicant's writs "on the findings of the trail court" (Exhibit I,J,K)

## Memorandum

1. **Motions filed pursuant to art.11.07 or art. 11.071 of the Texas Code of Criminal Procedure and Rule 79.2(d)**

   Counsel is aware of the limitations imposed by this foregoing rule and therefore asks the court to reconsider the denial *sua sponte* based upon the issues and facts presented in this motion or request.

**2. Due process requires an evidentiary hearing to resolve controverted facts where it is the word of the defendant against the word of counsel; cross examination is foundational to get to the truth in matters where is the word of trial counsel against the word of the defendant.**

If a trial court finds there are controverted, previously unresolved facts material to the legality of applicant's confinement, i.e., whether he received ineffective assistance of counsel, as the court in this matter did, then these issues shall be resolved in a timely manner:

**Coode of Criminal Procedure 11.07 art 3 (d): If the convicting court decides that there are controverted, previously unresolved facts which are material to the legality of the applicant's confinement, it shall enter an order within 20 days of the expiration of the time allowed for the state to reply, designating the issues of fact to be resolved. To resolve those issues the court may order affidavits, depositions, interrogatories, additional forensic testing, and hearings, as well as using personal recollection**

While this court gives deference to the manner in which a trial court gathers evidence due to the wide variety of claims made in Habeas applications, matters which can only be resolved by a credibility determination usually require a live hearing where the court can observe the witnesses and where the statements of the witnesses can be subjected to effective cross examination. This court often orders evidentiary hearings where the credibility of a witness in at issue. *Ex Parte Brown*, 205 S.W. 3d 538 (Tex. Crim. App. 2006); *Ex Parte Thompson*, 153 S.W. 3d 416 (Tex. Crim. .App. 2005). This is particularly important in claims of ineffective assistance of counsel where trial counsel flatly denies the defendant's allegations calling him a liar and responding with "not true" to each allegation of the defendant. (see Exhibit E). The 11th circuit stated the problem well in Gallego v. United States, 174 F.3d 1196 (11th Cir. 1999) "Where issues come down to the testimony of the defendant against the contradictory testimony of counsel, the defendant is going to lose every time" Where there is a dispute between the client and the attorney over what occurred the trial court is required to make a credibility determination that can best be made after a live hearing. In Gallegos, the court pointed out that "magistrate does not even state simply why the defendant's lawyer is the more credible witness in this case."

Based upon the foregoing the applicant though counsel respectfully requests this court remand the matter to the trial court for an evidentiary hearing where the completely contradictory statements of the applicant and trial counsel may be tested by cross examination and the trial court can make a credibility determination between the two.

Respectfully submitted,

By_____
Kenneth Eric Baker
SBN 24045439
Alamo Towers North
901 N.E. Loop 410, Suite 900
San Antonio, Texas 78209
210.226.4500 (P)
210.226.4502 (F)
Keblaw@gmail.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Motion was served upon the attorney for the State and on the Trial Court on September 29th. 2015.

_____
Attorney for Applicant

# Exhibit A

Case No. _____
(The Clerk of the convicting court will fill this line in.)


FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2015 MAR 17 A 11: 05

DEPUTY
BY_____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

**NAME:**  Lynwyatt Allen

**DATE OF BIRTH:**  01/25/1991

**PLACE OF CONFINEMENT:**  Dominguez State Jail 6535 Cagnon Rd, San Antonio, TX

**TDCJ-CID NUMBER:** __01935579          **SID NUMBER:**  1001292

(1)    This application concerns (check all that apply):

| | | | |
|---|---|---|---|
| xx | a conviction | N/A | parole |
| xx | a sentence | N/A | mandatory supervision |
| N/A | time credit | N/A | out-of-time appeal or petition for discretionary review |

(2)    **What district court entered the judgment of the conviction you want relief from?** (Include the court number and county.)

186Th District Court, Bexar County

_____

(3)    **What was the case number in the trial court?**

Cause No: 2013CR5726

_____

(4)    **What was the name of the trial judge?**

Teresa Herr

_____

Effective: January 1, 2014                    1

(5)    **Were you represented by counsel?  If yes, provide the attorney's name:**

Paul J. Goeke, SBN 08059250

_____

(6)    **What was the date that the judgment was entered?**

06/06/2013 _____

(7)    **For what offense were you convicted and what was the sentence?**

Intoxication assault 10 yrs _____

(8)    **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

_____

(9)    **What was the plea you entered? (Check one.)**

      __ **guilty-open plea**       _xx_ **guilty-plea bargain**
      __ **not guilty**

      __ *nolo contendere*/**no contest**

**If you entered different pleas to counts in a multi-count indictment, please explain:**

_____

_____

(10)    **What kind of trial did you have?**

      **NA no jury**                **NA  jury for guilt and punishment**
                                     **NA  jury for guilt, judge for punishment**

2

(11)    Did you testify at trial?   If yes, at what phase of the trial did you testify?

NA

(12)    Did you appeal from the judgment of conviction?

___ yes                              ___xx  no

If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?   NA

(B)  What was the case number?   NA

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's name:

NA

(D)  What was the decision and the date of the decision?   NA

(13)    Did you file a petition for discretionary review in the Court of Criminal Appeals?

NA  yes                              NA no

If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?   NA

(B)  What was the decision and the date of the decision?   NA

(14)    Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

___ yes                              __xx_  no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number? _____

3

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

___ yes                          _xx_ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

___ yes                          xx no

If you answered yes, answer the following questions:

(A) What date did you present the claim? _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4



(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*
If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Ineffective assistance of counsel

**FACTS SUPPORTING GROUND ONE:**

The attorney for Mr. Lynwyatt Allen (Defendant) pressured him into a plea. He was not prepared to go to trial.

Just before trial a plea bargain was presented according to the following terms:

An Application for deferred adjudication and probation could be made and a 15 year cap. The

Attorney for the Defendant represented that no finding of a deadly weapon would be made and

That the Defendant would receive deferred adjudication because he was "eligible". The

Defendant was actively mi-led by his attorney as to his application for probation being

Granted as well as in the matter of no deadly weapon finding being made. If the attorney had

properly advised the defendant that he might not receive deferred adjudication he would not

have entered a no-contest plea. If the defendant's attorney had told the defendant that a deadly

weapon finding would be made he would not have entered his plea. I was specifically told there

would be no finding of a deadly weapon

6



**GROUND TWO:**

N/A

**FACTS SUPPORTING GROUND TWO:**

N/A

8

N/A

**GROUND THREE:**

N/A

**FACTS SUPPORTING GROUND THREE:**

N/A

N/A

**GROUND FOUR:**

N/A

**FACTS SUPPORTING GROUND FOUR:**

N/A

N/A

**GROUND:**

N/A

**FACTS SUPPORTING GROUND:**

N/A

N/A

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant=s attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the AOath Before a Notary Public@ as petitioner and then complete APetitioner=s Information.@ A non-inmate applicant must sign the AOath Before a Notary Public@ before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the AOath Before a Notary Public@ before a notary public and must also complete APetitioner=s Information.@ An inmate petitioner must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public and must also complete the appropriate APetitioner=s Information.@

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF Bexar

_Kenneth Belk_ , being duly sworn, under oath says: AI am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true.@

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS 16th DAY OF March , 20 15 .

_____
Signature of Notary Public

JOAQUIN ALBERTO TORANZO, JR.
Notary Public, State of Texas
My Commission Expires
June 17, 2018

16

**PETITIONER=S INFORMATION**

Petitioner=s printed name: _Kenneth Baker_

State bar number, if applicable: _24045439_

Address: _115 E Travis St #133_

_San Antonio Tx 78205_

_____

Telephone: _(210) 226 - 4500_

Fax: _(210) 226 - 4502_

**INMATE=S DECLARATION**

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____

Signature of Applicant / Petitioner (circle one)

17

# Exhibit B

Case No. _____
(The Clerk of the convicting court will fill this line in.)

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2015 MAR 17 A 11: 05

DEPUTY
BY_____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

**NAME:** Lynwyatt Allen

**DATE OF BIRTH:** 01/25/1991

**PLACE OF CONFINEMENT:** Dominguez State Jail 6535 Cagnon Rd, San Antonio, TX

**TDCJ-CID NUMBER:** 01935579     **SID NUMBER:** 1001292

**(1)** This application concerns (check all that apply):

| | | | |
|---|---|---|---|
| xx | a conviction | N/A | parole |
| xx | a sentence | N/A | mandatory supervision |
| N/A | time credit | N/A | out-of-time appeal or petition for discretionary review |

**(2)** What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

186Th District Court, Bexar County

**(3)** What was the case number in the trial court?

Cause No: 2013CR5727

**(4)** What was the name of the trial judge?

Teresa Herr

Effective: January 1, 2014                    1

**(5)** **Were you represented by counsel?   If yes, provide the attorney's name:**

Paul J. Goeke, SBN 08059250

---

**(6)** **What was the date that the judgment was entered?**

06/06/2013

---

**(7)** **For what offense were you convicted and what was the sentence?**

Intoxication assault 10 yrs

---

**(8)** **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

---

**(9)** **What was the plea you entered?** (Check one.)

___ **guilty-open plea**              _xx_   **guilty-plea bargain**
___ **not guilty**

___ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**

---

**(10)** **What kind of trial did you have?**

NA no jury                NA   jury for guilt and punishment
                          NA   jury for guilt, judge for punishment

2

(11)     Did you testify at trial?   If yes, at what phase of the trial did you testify?

NA

(12)     Did you appeal from the judgment of conviction?

___ yes                                    ___xx  no


If you did appeal, answer the following questions:

(A)   What court of appeals did you appeal to?   NA

(B)   What was the case number?     NA

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's name:

NA

(D)   What was the decision and the date of the decision?   NA


(13)     Did you file a petition for discretionary review in the Court of Criminal Appeals?

NA   yes                          NA no


If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number?   NA

(B)   What was the decision and the date of the decision?   NA


(14)     Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

___ yes                                    __xx_  no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number? _____

3

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

___ yes                    __xx_ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

___ yes                    xx no

If you answered yes, answer the following questions:

(A) What date did you present the claim? _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4



(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*
If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Ineffective assistance of counsel

**FACTS SUPPORTING GROUND ONE:**

The attorney for Mr. Lynwyatt Allen (Defendant) pressured him into a plea. He was not prepared to go to trial.

Just before trial a plea bargain was presented according to the following terms:

An Application for deferred adjudication and probation could be made and a 15 year cap. The

Attorney for the Defendant represented that no finding of a deadly weapon would be made and

That the Defendant would receive deferred adjudication because he was "eligible". The

Defendant was actively mi-led by his attorney as to his application for probation being

Granted as well as in the matter of no deadly weapon finding being made. If the attorney had

properly advised the defendant that he might not receive deferred adjudication he would not

have entered a no-contest plea. If the defendant's attorney had told the defendant that a deadly

weapon finding would be made he would not have entered his plea. I was specifically told there

would be no finding of a deadly weapon

6



**GROUND TWO:**

_____ N/A _____


_____


**FACTS SUPPORTING GROUND TWO:**

_____ N\A _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

N/A

**GROUND THREE:**

N|A

**FACTS SUPPORTING GROUND THREE:**

N|A

N/A

**GROUND FOUR:**

N/A

**FACTS SUPPORTING GROUND FOUR:**

N/A

12

N/A

**GROUND:**

N/A

**FACTS SUPPORTING GROUND:**

N/A

N/A

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

**VERIFICATION**

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant=s attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the AOath Before a Notary Public@ as petitioner and then complete APetitioner=s Information.@ A non-inmate applicant must sign the AOath Before a Notary Public@ before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the AOath Before a Notary Public@ before a notary public and must also complete APetitioner=s Information.@ An inmate petitioner must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public and must also complete the appropriate APetitioner=s Information.@

**OATH BEFORE A NOTARY PUBLIC**

STATE OF TEXAS

COUNTY OF Bexar

_Kenneth Baker_ , being duly sworn, under oath says: AI am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true.@

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS 16th DAY OF March , 20 15 .

_____
Signature of Notary Public

JOAQUIN ALBERTO TORANZO, JR.
Notary Public. State of Texas
My Commission Expires
June 17, 2018

16

**PETITIONER=S INFORMATION**

Petitioner=s printed name: ___Kenneth Baker___

State bar number, if applicable: ___24045439___

Address: ___115 E Travis St #333___
___San Antonio TX 78205___

_____

Telephone: ___(210) 226-4500___

Fax: ___(210) 226-4502___

**INMATE=S DECLARATION**

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____
Signature of Applicant / Petitioner (circle one)

17

# Exhibit C

Case No. _____

(The Clerk of the convicting court will fill this line in.)



FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

2015 MAR 17 A II: 05

DEPUTY

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME:  Lynwyatt Allen

DATE OF BIRTH:  01/25/1991

PLACE OF CONFINEMENT:  Dominguez State Jail 6535 Cagnon Rd, San Antonio, TX

TDCJ-CID NUMBER: __01935579            SID NUMBER: 1001292

(1)    This application concerns (check all that apply):

|           |                 |     |                                                    |
|-----------|-----------------|-----|----------------------------------------------------|
| xx        | a conviction    | N/A | parole                                             |
| xx        | a sentence      | N/A | mandatory supervision                              |
| N/A       | time credit     | N/A | out-of-time appeal or petition for discretionary review |

(2)    What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

186Th District Court, Bexar County

_____

(3)    What was the case number in the trial court?


Cause No: 2013CR5726

_____

(4)    What was the name of the trial judge?


Teresa Herr

_____

Effective: January 1, 2014            1

(5)     Were you represented by counsel?   If yes, provide the attorney's name:

Paul J. Goeke, SBN 08059250

_____

(6)     What was the date that the judgment was entered?

06/06/2013
_____

(7)     For what offense were you convicted and what was the sentence?

Intoxication assault 10 yrs
_____

(8)     If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?


_____

(9)     What was the plea you entered? (Check one.)

    __  guilty-open plea          _xx_  guilty-plea bargain
    __  not guilty


    __  *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:


_____


(10)    What kind of trial did you have?

        NA no jury                  NA   jury for guilt and punishment
                                    NA   jury for guilt, judge for punishment


2

(11)    Did you testify at trial?   If yes, at what phase of the trial did you testify?

NA
_____

(12)    Did you appeal from the judgment of conviction?

____  yes                              ___xx  no


If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?  NA_____

(B)  What was the case number?    NA_____

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's name:

_____NA_____

(D)  What was the decision and the date of the decision?  NA_____


(13)    Did you file a petition for discretionary review in the Court of Criminal Appeals?

NA  yes                              NA no


If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?  NA_____

(B)  What was the decision and the date of the decision?   NA_____


(14)    Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

___ yes                              __xx_  no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number? _____


3

(B)  What was the decision and the date of the decision?  _____

(C)  Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15)  Do you currently have any petition or appeal pending in any other state or federal court?

___ yes                            _xx_ no

If you answered yes, please provide the name of the court and the case number:

_____

(16)  If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

___ yes                            xx  no

If you answered yes, answer the following questions:

(A)  What date did you present the claim?  _____

(B)  Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4



(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*
If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

## GROUND ONE:

Ineffective assistance of counsel

## FACTS SUPPORTING GROUND ONE:

The attorney for Mr. Lynwyatt Allen (Defendant) pressured him into a plea. He was not prepared to go to trial.

Just before trial a plea bargain was presented according to the following terms:

An Application for deferred adjudication and probation could be made and a 15 year cap. The

Attorney for the Defendant represented that no finding of a deadly weapon would be made and

That the Defendant would receive deferred adjudication because he was "eligible". The

Defendant was actively mi-led by his attorney as to his application for probation being

Granted as well as in the matter of no deadly weapon finding being made. If the attorney had

properly advised the defendant that he might not receive deferred adjudication he would not

have entered a no-contest plea. If the defendant's attorney had told the defendant that a deadly

weapon finding would be made he would not have entered his plea. I was specifically told there

would be no finding of a deadly weapon

6



**GROUND TWO:**

N/A

**FACTS SUPPORTING GROUND TWO:**

N/A

N/A

**GROUND THREE:**

N/A

**FACTS SUPPORTING GROUND THREE:**

N/A

N/A

**GROUND FOUR:**

N/A

**FACTS SUPPORTING GROUND FOUR:**

N/A

12

N/A

**GROUND:**

N/A

**FACTS SUPPORTING GROUND:**

N/A

N/A

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant=s attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the AOath Before a Notary Public@ as petitioner and then complete APetitioner=s Information.@ A non-inmate applicant must sign the AOath Before a Notary Public@ before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the AOath Before a Notary Public@ before a notary public and must also complete APetitioner=s Information.@ An inmate petitioner must sign either the AOath Before a Notary Public@ before a notary public or the AInmate=s Declaration@ without a notary public and must also complete the appropriate APetitioner=s Information.@

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF Bexar

_Kenneth Baker_____, being duly sworn, under oath says: AI am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true.@

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _16th_DAY OF_March_, 20_15_.

JOAQUIN ALBERTO TORANZO, JR.
Notary Public, State of Texas
My Commission Expires
June 17, 2018

_____
Signature of Notary Public

16

**PETITIONER=S INFORMATION**

Petitioner=s printed name: _Kenneth Baker_

State bar number, if applicable: _24045439_

Address: _115 E Travis St # 153_

_San Antonio TX 78205_

_____

Telephone: _(210) 226 - 4500_

Fax: _(210) 226 - 4502_

**INMATE=S DECLARATION**

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____

Signature of Applicant / Petitioner (circle one)

17

# Exhibit D

NO. 2013CR5726-W1
2013CR5727-W1
2013CR2728-W1

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | 186TH JUDICIAL DISTRICT |
| LYNWYATT ALLEN | § | BEXAR COUNTY, TEXAS |

## ORDER ON APPLICATION FOR POST CONVICTION WRIT

The Court having concluded that the allegations of ineffective assistance of counsel contained in an application for a post-conviction writ of habeas corpus create a necessity for a hearing, but that the matter is capable of resolution by means of affidavits, it is **ORDERED**, as follows:

That the Clerk forward a copy of the writ application and its attachments to **Paul Joseph Goeke, 115 E. Travis St., Suite 1145, San Antonio, Texas 78205.**

1. That, on or before **May 07, 2015, Paul Goeke** file with this court his written affidavit confirming or denying the allegations of ineffective assistance.

   a. Please respond to Applicant's allegations regarding the claims of ineffective assistance of counsel, including, but not limited to, the following:

      (1) Counsel pressured Applicant into taking a plea because he was not prepared to go to trial.
      (2) Applicant was misled by Counsel as to his application for probation being granted as well as in the matter of no deadly weapon finding being made.
      (3) Had Counsel properly advised the Applicant that he might not receive deferred adjudication he would not have entered a no-contest plea.
      (4) Counsel specifically told Applicant that there would be no finding of deadly weapon.

   b. After you have reviewed the Applicant's writ application, please address any other issues raised by Applicant not specifically listed above and of which you have knowledge or information.

   c. If there is any additional information not present before the court at this time that is relevant to the court's understanding of this matter, please include any such information to clarify this issue.

Simultaneously, **Paul Goeke** shall deliver the affidavit and summation to **Attorney for**

1

Applicant Kenneth Eric Baker, 115 E. Travis, Suite 333, San Antonio, Texas 78205. After these matters have occurred, this Court will forward its Order including its findings to the Court of Criminal Appeals for its disposition of the matter.

Information contained in an affidavit filed pursuant to this order does not represent a violation of the attorney-client privilege. *See* TEX. R. EVID. 503(d)(3)(stating that communications relevant to issues concerning breach of counsel's duty to his client represents an exception to the rule governing attorney-client privilege).

**Failure to abide by this order is subject to a charge of contempt.**

SIGNED and ENTERED this 23 day of MARCH, 2015

_____
JEFFERSON MOORE
Judge 186th Judicial District Court
Bexar County, Texas

cc:
**Attorney for Applicant**
**Kenneth Eric Baker**
**115 E. Travis, Suite 333**
**San Antonio, Texas 78205.**

2

# Exhibit E

THE STATE OF TEXAS                       §
                                         §
COUNTY OF BEXAR                          §

BEFORE ME, the undersigned authority, on this day personally Paul J. Goeke, who, being duly sworn, deposed as follows:

Undersigned counsel has been directed by the District Court to provide an affidavit in response to a Pro Se Writ of Habeas Corpus filed by Lynwyatt Allen.

In response to this Honorable Court's order of the 23rd day of March 2015 please find the following:

Objection: This Honorable Court's order violates the attorney-client privilege. In anticipation of this objection, the Court observes in the order that this Writ of Habeas Corpus alleges a breach of an attorney's duty to a client and an exception to the privilege is created by Texas Rules of Evidence 503(§) (3). With the objection anticipatorily overruled, please find the following:

In the following affidavit, undersigned counsel does not use the more formal construct of describing the affiant as "undersigned counsel", but adopts the less awkward colloquial use of the first person.

**1(a)(1): The Applicant alleges that "Counsel pressured Applicant into taking a plea because he was not prepared to go to trial".**

**Response to 1(a)(1):** Not True.

*Applicant was in no way pressured into taking a plea.*

The original plea bargain offer to Applicant had been a flat fifteen (15) year sentence on the intoxication manslaughter indictment, and a ten (10) year sentence on each of the intoxication assault indictments with an affirmative finding of the use of a

deadly weapon, all to run concurrently. This offer did not change until immediately before trial. The prosecutor had changed from Assistant District Attorney (Mr.) David Henderson to Assistant District Attorney (Mr.) Eric Fuchs. It was Mr. Fuchs who relented on the day of trial by offering a 15 year "cap" **without requiring** the Court to make a finding of the use of a deadly weapon, thus allowing Applicant to apply for adjudicated (regular) community supervision. This offer made possible a sentence of less than fifteen years without an affirmative finding leading to earlier parole eligibility. The likelihood of adjudicated community supervision being granted was described to Applicant as being extremely remote.

*I was completely prepared to go to jury trial.*

I had retained Dr. Michael Arambula, a highly qualified forensic psychiatrist, who subsequently testified at Applicant's sentencing hearing in much the same manner as he would have testified in a jury trial. In addition to being a forensic psychiatrist, Dr. Arambula has an advanced post doctorate in Pharmacy (referred to as a Pharm D.) This unique combination makes Dr. Arambula among the most highly qualified to testify with regard to psychopharmacology, the study of effects of alcohol and other chemicals on the mind and body.

The assertion that I was not prepared for trial is demonstrably ludicrous, as evidenced by the testimony of this expert witness and several character witnesses from out of town during the sentencing hearing that resulted from his voluntary plea. These are the very witnesses who would have testified to a jury. Based upon the unraveling of the initial defense and the changing of the plea offer to a "cap" with the option of the court

2

not entering an affirmative 3(g) finding, Applicant made an intelligent and fully informed decision to waive a jury and enter a plea bargain agreement.

Each of the very witnesses that I would have used in his jury trial testified in his sentencing hearing. They would not have done so were I not prepared for trial. He simply wisely decided to limit his exposure, as the truth of his behavior became unavoidable.

**1(a)(2): Applicant alleges that "Applicant was misled by Counsel as to his application for probation being granted as well as in the matter of no deadly weapon finding being made".**

**Response to 1(a)(2):** Not True.

This is a complete and utter falsehood. The Applicant was always informed that the possibility of probation from the court was extremely remote. Applicant was advised that the main benefit of this plea bargain was that the sentences were certain to run concurrently and that there was a **possibility** that the Hon. Judge Herr would be somewhat solomonic with regard to the "cap" of fifteen (15) years and the full range of punishment, each offense having a minimum sentence of two (2) years. Unfortunately for Applicant, the prosecution successfully countered this possibility by literally "packing the courtroom" with friends and family of the decedent and complainants.

One complainant had been extremely disfigured in the collision, a fact which the prosecution underlined by displaying a "before" photo showing that he had previously been "movie star" handsome. His live testimony then made his unfortunate disfigurement obvious.

3

This case was unique in my experience in that the head-on collision leading to the death and injuries was actually captured on the dashboard camera of a patrol car. The police officer was responding to reports of Applicant's vehicle traveling on the wrong side of the highway for a long distance, almost striking other drivers who then phoned 911.

The officer testified that he was rushing to the scene to intercept Applicant by "bumping" him off the road before such a tragedy as this could occur. This unique situation led to the actual capture of the violent head-on collision between the victims' and Applicant's trucks on that officer's "dash cam".

I relate this event in order to explain the environment in which Judge Herr was required to pronounce sentence. When the video of the collision was played in open court, a relative of one of the victims ran from the courtroom, loudly retching; a dramatic occurrence which dominated the subsequent news coverage. This, combined with Applicant's poor testimonial performance and other aspects of this case led to the growing inevitability of the maximum sentence being pronounced in open court in the presence of the many friends and family of the dead and disfigured victims.

**1(a)(3): Applicant alleges that "had Counsel properly advised the Applicant that he might not receive deferred adjudication he would not have entered a no-contest plea".**

**Response to 1(a)(3): Not True.**

Again, a complete and utter falsehood. Since my licensure in 1983, deferred adjudication has not been available even for simple DWI and with the subsequent creation of the Penal Code offenses of Intoxication Assault and Intoxication

4

Manslaughter in the 73rd legislature (effective September 1, 1994), deferred adjudication has **never** been available for these offenses as well. These matters were explained to Applicant and his family at length and in detail in response to their initial inquiries regarding the potential for plea bargaining and sentencing from the beginning of my representation.

Applicant was initially (and throughout my representation) completely and clearly informed of the sentencing realities pursuant to Texas Law and that he could not receive deferred adjudication for these offenses under any circumstance and that with the use of a deadly weapon being formally alleged, he could **only** receive probation (adjudicated community supervision) **from a jury** after a trial.

The topic of deferred adjudication **never arose** in conjunction with the discussion of the plea bargain offer.

**1(a)(4): Applicant alleges "Counsel specifically told Applicant that there would be no finding of deadly weapon".**

**Response to 1(a)(4):** Not True. Applicant had always been told that the trial court could not grant probation in the presence of an affirmative finding of the use of a deadly weapon.

Again, a complete and utter falsehood. The Applicant was advised that there was a **possibility** that Judge Herr might not enter a deadly weapon finding in a judgment sentencing him to prison. He was advised that, under the right circumstances, Judge Herr **might** reward him for having waived a jury and entering a plea by "splitting the baby", with a sentence less than the maximum and/or by **possibly** not entering a deadly weapon finding in the judgment.

5

It should be noted that up until the time of impending jury selection, the offer had been a flat 15 years **to do,** (**not** a cap) **with** an affirmative finding of the use of a deadly weapon. In a jury trial, Applicant was faced with the possibility of being denied probation by the jury and then facing with the possibility of Judge Herr ordering any jury sentences to be run consecutively. It is because the plea changed to a "cap" of 15 years concurrent **without** the **requirement** that the court enter a deadly weapon finding and the resulting **possibility** of a sentence **under** the cap and/or **without** a deadly weapon finding, that Applicant elected to enter into a plea bargain agreement. Again, the possibility of community supervision from the court was always described to Applicant as being extremely remote.

**Pursuant to this Honorable Court's Order at 1(b) please find the following: After you have reviewed Applicant's writ application, please address any other issues raised by Applicant not specifically listed above and of which you have knowledge or information:**

**Response to 1(b):** Not Applicable

**Pursuant to this Honorable Court's Order at 1(c) please find the following:**

**This Honorable Court instructs that if there is any additional information not present before the court at this time that is relevant to the courts understanding of this matter, please include any such information to clarify this matter, Pursuant to this order, please find the following:**

Placing this case in full context will help the court to understand the unique dynamics involved leading up to Applicant's plea.

I was a zealous and committed advocate for Applicant from the moment his father Bob Allen first appeared in my office until the time that I was unformed that Applicant had filed a pro se writ of habeas corpus challenging my effectiveness.

Mr. Allen came to me concerned that his son (Applicant) would be irrevocably injured were he to be moved to general population in the Bexar County Jail. Applicant had received a cervical fracture in the collision which led to his arrest. This fracture placed him at risk for spinal cord injury in the violent atmosphere of Bexar County Jail general population.

Despite the fact that Mr. Allen could not pay me, I put aside other work and sought Applicant's release from custody on personal recognizance. I was successful in this regard.

I told Mr. Allen at the time that Applicant's only hope for probation was from a jury, given the death and severity of injuries he had caused. The plan from the outset was trial by jury.

Mr. Allen described his son as young and inexperienced, not given to drinking alcohol and the type of drinker who would not even finish a beer. Mr. Allen described how his son had become romantically involved with an older woman and that this involvement lead to an episode of drinking with her friends during which he had become intoxicated. When he was left behind by the group, he had drunkenly found his way to his truck, driven off and caused the fatal accident.

I determined to present the mitigating aspects of this scenario to a jury hoping for probation under the circumstances. In this regard, I hired Dr. Michael Arambula, a forensic psychiatrist and Pharm D, making him authoritative in psychopharmacology (the

7

effect of drugs and alcohol on the mind). I also planned to present individuals who knew Applicant as an inexperienced non-drinker whose naiveté would be viewed as mitigating by the jury.

As the case progressed however, it became apparent that Mr. Allen's version of the event was a complete fiction.

A picture emerged that Applicant had in fact started drinking heavily in this new relationship and had probably embarrassed his girlfriend with his drunken behavior on the night in question. When she sought to have him stay behind to "sleep it off", he experienced this as an humiliating abandonment by his "first love", became suicidal and tried to "end it all" by intentionally driving down the wrong side of the highway without regard to the innocent lives he might effect thereby.

The initial medical records brought to me by Applicant's father were consistent with the false story he gave me about Applicant's naiveté with alcohol. As trial approached, I obtained more complete records in discovery that revealed Applicant's growing history of alcohol abuse, records in which he admitted periodic binge drinking leading up to the offense in question and a developing alcoholism consistent with his family history and one which he had been desperate to conceal from them.

Applicant's mother is Native American. Her brother's alcohol addiction led to multiple DWI arrests, imprisonment and eventual death from acute alcohol poisoning. I expressed my concerns that (1) this had been withheld from me (2) with the well-known genetic basis for alcoholism and (3) how incompatible this was with his defense of naïveté. As trial approached and I inquired about the witnesses with whom he was

drinking on the night of the accident, it became clear that their presence would further undermine his claims of inexperience and seal his fate.

I was forced to adapt my trial strategy to conceal these truths from the prosecution. As it was, Applicant and I were careful to structure his testimony to avoid any mention of his former girlfriend's name, a commercial photographer with a webpage who could easily be found on the Internet by a quick thinking prosecutor. It was evident that had the prosecution made contact, it would have led to disastrous results.

## The Sentencing Hearing

While I was prepared to present mitigation to Judge Herr in the sentencing hearing, I had not anticipated how effectively the prosecution would counter this by literally packing the courtroom with the friends and family of the victims. This seemed to place sociopolitical pressure on the sentencing judge. I informed Applicant that I might be able counter this during the 30-day period of continuing jurisdiction.

It is true that I did not expect or predict that Judge Herr would give Applicant **no** leniency at all under the terms of the plea bargain agreement, sentencing him to the maximum allowed under the "cap". This likelihood only developed during the sentencing hearing. I believe that the Honorable Judge Herr may have experienced some political "pressure" from the packed courtroom and the above-described events. Subsequent developments lend credence to this theory: Judge Herr later **did** manifest significant leniency (when **not** in open court) by actually granting Applicant significant credit for time served while on electronic monitoring, as though Applicant had served that time in the county jail when in fact he had not, credit to which he was simply not entitled under the law.

Such a grant of leniency was specifically addressed and found to be unauthorized in *Tagorda vs. State* 977 SW2d 632 (Ct. App.- Ft. Worth) (1998). This leniency was thus **quietly** expressed in a subsequent amended judgment modifying (in private) the original judgment entered by Judge Herr and thus was not announced in open court and not readily apparent to the aforementioned crowd of family and friends. I had hoped that Judge Herr would **also** elect to refrain from making an affirmative 3(g) finding in the judgment. The latter was not to be, however.

I believe the resulting amended judgment legitimizes my belief that the Hon. Judge Herr was uncharacteristically harsh in her open court actions, something that I could not have reasonably predicted prior to the actual hearing. I advised Applicant of my growing concerns at counsel table during the hearing. I also advised him of the trial court's continuing jurisdiction and control over the contents of the actual judgment as opposed to her pronouncements in open court. Her maximum sentence of 15,10, and 10 years respectively **with** an affirmative finding of the use of a deadly weapon were all pronounced in **open** court. Her leniency was expressed privately in an amended judgment. I had approached Judge Herr in open court several days after the sentencing hearing and asked her to consider these alternatives. The prosecutor in attendance at the time did not comment on the request.

In this affidavit, I have expressly described each of Applicant's assertions as complete and utter falsehoods for a reason: it is because they **are** complete and utter falsehoods and because he knows that they are.

I was a zealous advocate for Applicant before, during and **after** his trial and I am therefore somewhat mystified by the completely baseless claim of Ineffective Assistance

10

of Counsel, particularly because Applicant was advised of a **legitimate** avenue for seeking a new trial.

After his sentencing, Applicant and his family were repeatedly informed of the thirty (30) day motion for new trial jurisdiction and were urged by me to contact experienced Board Certified Criminal Law Specialists in order to attempt to set aside the resulting sentence. I received a number of calls from qualified lawyers and spoke with several experienced criminal defense lawyers about areas of possible post-conviction relief and my willingness to assist in this regard.

For example, this case was extensively litigated in a pretrial motion to suppress regarding the validity of the warrantless blood draw. That motion was overruled by the court. It is highly likely that the trial court was in error in that regard. The prosecutor at the time (Mr. Fuchs) confided in me his concern that my suppression argument was valid and his fear that the judgment could be overturned on appeal when I structured the plea in such a way as to preserve Applicant's right to appeal rulings on pretrial motions. In response to my having structured the plea to appeal the motion to suppress, the prosecutor supplemented the stipulations in a way he believed would defeat such an appeal.[1] That avenue was not pursued then, due to the pendency of the above described credit for time served. However, it **should** have been raised in this writ of Habeas Corpus by seeking an out of time appeal in that regard, as that issue would in my opinion have a high likelihood of success, certainly higher than that of a patently absurd claim of

---

[1] In addition to the forensic blood draw, the state had hospital records with plasma alcohol concentrations based on clinical laboratory analysis. The prosecutor supplemented the stipulations with these hospital records, erroneously believing such supplementation would defeat the appeal of the pretrial motion. It would not. The case law establishes that, if Applicant's decision to enter a plea bargain agreement was in any way influenced by the court's erroneous ruling on the motion to suppress, relief should be forthcoming. My original trial plan was to challenge the hospital blood draw pursuant to the holding of _Bullcoming v. New Mexico_, 131 S.Ct. 2705 (2011) and the absence of the hospital technician.

11

ineffective assistance of counsel. The Applicant's post-conviction pursuits would have been better placed in that regard and why that has been abandoned is beyond me except for Applicant's acting pro se and without competent legal advice in this regard.

I had previously advised Applicant and his family of the post-conviction strategy of seeking an out of time appeal challenging the denial of the motion to suppress. I had explained that Applicant could file a motion for new trial and/or give notice of appeal regarding the motion to suppress ruling. I also explained that doing so might draw attention to the unauthorized credit for time served and cause an interested prosecutor to challenge this credit.[2]

There also remained the possibility of the trial court reconsidering the deadly weapon finding by removing or omitting it in the judgment. As it developed, the trial court **amended** the judgment by awarding credit for time served. Judge Herr actually did this **after** her jurisdiction had expired in a manner which could now (and then) be challenged as invalid. Unfortunately, the affirmative finding of the use of a deadly weapon remained. The **better** strategy for Applicant would have been to employ experienced counsel and seek an out of time appeal of the motion to suppress through a post conviction writ of habeas corpus, a strategy which is probably now foreclosed by the "one writ rule". By acting pro se and not following my advice, he has (1) lost a legitimate challenge to his conviction and (2) threatened the continuing viability of his unauthorized credit for time served. If the prosecution now challenges that credit for time served, he will **probably** lose it. Additionally, he will not be able to challenge the trial court's

---

[2] I had discussed this dilemma with Applicant during the period of continuing jurisdiction by the trial court. Because the attorney client relationship became contentious, I reduced part of this advice to writing and delivered it to Applicant in jail. **See Attached Exhibit A.**

12

erroneous denial of his motion to suppress the warrantless blood draw, thus ruling out any further challenge to his sentence.

Undersigned counsel will respond further as directed by the court.

I declare the foregoing to be true and correct under penalty of perjury."

"Further affiant sayeth not."

_____
Paul J. Goeke

SWORN AND SUBSCRIBED to before me this 7th day of _May_ 2015, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas
County of Bexar

13

# Exhibit F

NO. 2013CR5726-W1
2013CR5727-W1
2013CR5728-W1

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | 186TH JUDICIAL DISTRICT |
| LYNWYATT ALLEN | § | BEXAR COUNTY, TEXAS |

## ORDER DESIGNATING ISSUES

The Court having concluded that controverted, previously unresolved facts which are material to the legality of Applicant's confinement exist and need to be resolved, there is a necessity for the suspension of the time limitations enunciated in Article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 3(d) (West 2012).

Applicant has alleged the following issue which the court finds requires resolution:

a. Ineffective Assistance of Counsel

Findings will be forwarded to the Court of Criminal Appeals for its disposition of the matter.

SIGNED and ENTERED on ___2-3 MARCH 2015___.

JEFFERSON MOORE
Judge 186th Judicial District Court
Bexar County, Texas

# Exhibit G

**PAUL J. GOEKE**
ATTORNEY AT LAW
MILAM BUILDING, SUITE 1145
115 E. TRAVIS STREET
SAN ANTONIO, TEXAS 78205-1755
(210) 222-2999
FAX: (210) 222-0052
RES: (210) 495-9144

BOARD CERTIFIED
CRIMINAL LAW SPECIALIST
TEXAS BOARD OF LEGAL SPECIALIZATION

MEMBER, COLLEGE OF THE
STATE BAR OF TEXAS

May 20, 2015

**VIA HAND DELIVERY**

Kenneth Baker
115 E. Travis, Ste. 333
San Antonio, Texas 78205

RE:  *State of Texas v. Lynwyatt Allen; Cause Nos. 2013-CR-5726, 2013-CR-5727, 2013-CR-5728*

Dear Sir:

Enclosed please find one (1) copy of the Affidavit in Response to the pro se writ of Habeas Corpus to be filed in the above referenced matter. Please excuse the delay in sending your copy.

Should you have any questions please do not hesitate to contact this office.

Sincerely,

Paul J. Goeke
Attorney at Law

BY: _____
Tarin C. Tellez/ Legal Assistant

Enc.

——————————————— **OF COUNSEL** ———————————————

**BENNIE E. RAY**
710 W. 14TH STREET, SUITE C
AUSTIN, TEXAS 78701
1-800-DWI-1010 · (512) 479-7775

**J. GARY TRICHTER**
2000 SMITH STREET
HOUSTON, TEXAS 77002
1-800-DWI-1010
GARY@TEXASDWILAW.COM · WWW.TEXASDWILAW.COM

**MIKE McCOLLUM**
6116 N. CENTRAL EXPRESSWAY, SUITE 304
DALLAS, TEXAS 75206
1-800-DWI-1010 · (214) 691-3975

# Exhibit H



| EX PARTE | § | IN THE DISTRICT COURT |
|---|---|---|
|  | § | 186TH JUDICIAL DISTRICT |
| LYNWYATT ALLEN | § | BEXAR COUNTY, TEXAS |

## ORDER

Applicant, **Lynwyatt Allen**, has filed a *pro se* application for a post-conviction writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure, collaterally attacking his conviction in cause number **2013CR5726; 2013CR5727; 2013CR5728**. TEX. CODE CRIM. PROC. art. 11.07 (West 2012).

## HISTORY OF THE CASE

On or about June 6, 2013, Applicant plead guilty to the offense of **intoxication assault**. Applicant was sentenced to **ten (10) years** confinement in the Texas Department of Corrections – Institutional Division. Applicant did not file a direct appeal. This application for writ of habeas corpus was filed on March 17, 2015. The District Attorney received a copy of this application on March 18, 2015.

## ALLEGATIONS OF APPLICANT

1. In Applicant's sole ground for relief, Applicant alleges ineffective assistance of counsel.

   - Specifically, Applicant alleges that Trial Counsel pressured him into a plea and represented that no finding of a deadly weapon would be made and that Applicant would receive deferred adjudication because he was "eligible." Also, Trial Counsel misled Applicant to believe that his application for probation was being granted and had Trial Counsel informed Applicant that he would not receive probation and that a

1

deadly weapon finding would be made, he would not have entered a no-contest plea.

## FINDINGS OF FACT

1. On or about June 6, 2013, Applicant plead guilty to the offense of **intoxication assault**. Applicant was sentenced to **ten (10) years** confinement in the Texas Department of Corrections – Institutional Division.

2. Applicant did not file a direct appeal.

3. The trial court requested and received an affidavit from Applicant's Trial Counsel, Paul J. Goeke (Attachment: Affidavit). Although the court finds the affidavit credible, the court takes issue with portions of the affidavit in which the affiant speculates as to the court's decisions for certain rulings.

    a. "The original plea bargain offer to Applicant had been a flat fifteen (15) year sentence on the intoxication manslaughter indictment, and a ten (10) year sentence on each of the intoxication assault indictments with an affirmative finding of the use of a deadly weapon, all to run concurrently. This offer did not change until immediately before trial. The prosecutor had changed from Assistant District Attorney (Mr.) David Henderson to Assistant District Attorney (Mr. ) Eric Fuchs. It was Mr. Fuchs who relented on the day of trial by offering a 15 year "cap" **without requiring** the Court to make finding of the use of a deadly weapon, thus allowing Applicant to apply for adjudicated (regular) community supervision. This offer made possible a sentence of less than fifteen years without an affirmative finding leading to earlier parole eligibility. The likelihood of adjudicated community supervision being granted was described to Applicant as being extremely remote. I had retained Dr. Michael Arambula, a highly qualified forensic psychiatrist, who subsequently testified at Applicant's sentencing hearing in much the same manner as he would have testified in a jury trial. In addition to being a forensic psychiatrist, Dr. Arambula has an advanced post doctorate in Pharmacy (referred to as a Pharm D.) This unique combination makes Dr. Arambula among the most highly qualified to testify with regard to psychopharmacology, the study of effects of alcohol and other chemicals on the mind and body. The assertion that I was not prepared for trial is demonstrably ludicrous, as evidenced by the testimony of this expert witness and several character witnesses from out of town during the sentencing hearing that resulted from his voluntary plea. These are the very witnesses who would have testified to a jury. Based upon the unraveling of the initial defense and the changing of the plea offer to a "cap" with the option of the court not entering an affirmative 3(g)

2

finding, Applicant made an intelligent and fully informed decision to waive a jury and enter a plea bargain agreement. Each of the very witnesses that would have used in his jury trial testified in his sentencing hearing. They would not have done so were I not prepared for trial. He simply wisely decided to limit his exposure, as the truth of his behavior became unavoidable. "

b. "This is a complete and utter falsehood. The Applicant was always informed that the possibility of probation from the court was extremely remote. Applicant was advised that the main benefit of this plea bargain was that the sentences were to run concurrently and that there was a **possibility** that the Hon. Judge Herr would be somewhat solomonic with regard to the "cap" of fifteen (15) years and the full range of punishment, each offense having a minimum sentence of two (2) years. Unfortunately for Applicant, the prosecution successfully counters this possibility by literally "packing the courtroom" with friends and family of the decedent and complainants. One complainant had been extremely disfigured in the collision, a fact which the prosecution underlined by displaying a "before" photo showing that he had previously been "movie star" handsome. His live testimony then made his unfortunate disfigurement obvious. This case was unique in my experience in that the head-on collision leading to the death and injuries was actually captured on the dashboard camera of a patrol car. The police officer was responding to reports of Applicant's vehicle traveling on the wrong side of the highway for a long distance, almost striking other drivers who them phoned 911. The officer testified that he was rushing to the scene to intercept Applicant by "bumping" him off the road before such a tragedy as this could occur. This unique situation led to the actual capture of the violent head-on collision between the victims' and Applicant's trucks on that officer's "dash cam". I relate this event in order to explain the environment in which Judge Herr was required to pronounce sentence. When the video of the collision was played in open court , a relative of one of the victims ran from the courtroom, loudly retching; a dramatic occurrence which dominated the subsequent news coverage. This, combined with Applicant's poor testimonial performance and other aspects of this case led to the growing inevitability of the maximum sentence being pronounced in open court in the presence of the many friends and family of the dead and disfigured victims."

c. "Again, a complete and utter falsehood. Since my licensure in 1983, deferred adjudication has not been available even for simple DWI and with the subsequent creation of the Penal Code offenses of Intoxication Assault and Intoxication Manslaughter in the 73rd legislature (effective September 1, 1994), deferred adjudication has **never** been available for these offenses as well. These matters were explained to Applicant and his family at length and in detail in response to their initial inquires regarding the potential for plea bargaining and sentencing from the beginning of my representation. Applicant was initially (and throughout my representation) completely and clearly informed of the sentencing realities pursuant to Texas Law and that he could not receive deferred adjudication for these offenses under any circumstance and that with the use of a deadly weapon being formally alleged, he could **only** receive probation (adjudication community supervision) **from a jury** after a trial. The topic of deferred adjudication never

3

arose in conjunction with the discussion of the plea bargain offer."

d.  "Not true. Applicant had always been told that the trial court could not grant probation in the presence of an affirmative finding of the use of a deadly weapon. Again, a complete and utter falsehood. The Applicant was advised that there was a **possibility** that Judge Herr might not enter a deadly weapon finding in a judgment sentencing him to prison. He was advised that, under the right circumstances, Judge Herr **might** reward him for having waived a jury and entering a plea by "splitting the baby" with a sentence less than the maximum and/or by **possibly** not entering a deadly weapon finding judgment. It should be noted that up until the time of impending jury selection, the offer had been a flat 15 years **to do (not** a cap) **with** an affirmative finding of use of a deadly weapon. In a jury trial, Applicant was faced with the possibility of being denied probation by the jury and then facing with the possibility of Judge Herr ordering any jury sentences to be run consecutively. It is because the plea changed to a "cap" of 15 years concurrent **without** the **requirement** that the court enter a deadly weapon finding and the resulting **possibility** of a sentence **under** the cap and/or **without** a deadly weapon finding, that Applicant elected to enter into a plea bargain agreement. Again, the possibility of community supervision from the court was always described to Applicant as being extremely remote."

e.  "Placing this case in full context will help the court understand the unique dynamics involved leading up to Applicant's plea. I was a zealous and committed advocate for Applicant from the moment his father Bob Allen first appeared in my office until the time that I was unformed (sic) that Applicant had filed a pro se writ of habeas corpus challenging my effectiveness. Mr. Allen came to me concerned that his son (Applicant) would be irrevocably injured were he to be moved to general population in the Bexar County Jail. Applicant had received a cervical fracture in the collision which led to his arrest. This fracture placed him at risk for spinal cord injury in the violent atmosphere of Bexar County Jail general population. Despite the fact that Mr. Allen could not pay me, I put aside other work and sought Applicant's release from custody on person recognizance. I was successful in this regard. I told Mr. Allen at that time that Applicant's only hope for probation was from a jury, given the death and severity of injures he had caused. The plan from the outset was trial by jury. Mr. Allen described his son as young and inexperienced, not given to drinking alcohol and the type of drinker who would not even finish a beer. Mr. Allen described how his son had become romantically involved with an older woman and that this involvement lead to an episode of drinking with her friends during which he had become intoxicated. When he was left behind by the group, he had drunkenly found his way to his truck, driven off and caused the fatal accident. I determined to present the mitigating aspects of this scenario to a jury hoping for probation under the circumstances. In this regard, I hired Dr. Michael Arambula, a forensic psychiatrist and Pharm D. making him authoritative in psychopharmacology (the effect of drugs and alcohol on the mind). I also planned to present individuals who knew Applicant as an inexperienced non-drinker whose naivete would be viewed as mitigating by the jury. As the case progressed however, it became apparent that

4

Mr. Allen's version of the event was complete fiction. A picture emerged that Applicant had in fact started drinking heavily in this new relationship and had probably embarrassed his girlfriend with his drunken behavior on the night in question. When she sought to have him stay behind to "sleep it off", he experienced this as an humiliating abandonment by his "first love", became suicidal and tried to "end it all" by intentionally driving down the wrong side of the highway without regard to the innocent lives he might effect thereby. The initial medical records brought to me by Applicant's father were consistent with the false story he gave me about Applicant's naivete with alcohol. As trial approached, I obtained more complete records in discovery that revealed Applicant's growing history of alcohol abuse, records in which he admitted periodic binge drinking leading up to the offense in question and a developing alcoholism consistent with his family history and one which he had been desperate to conceal from them. Applicant's mother is Native American. Her brother's alcohol addiction led to multiple DWI arrests, imprisonment and eventual death from acute alcohol poisoning. I expressed my concerns that (1) this had been withheld from me (2) with the well-known genetic basis for alcoholism and (3) how incompatible this was with his defense of naivete. As trial approached and I inquired about witnesses with whom he was drinking on the night of the accident, it became clear that their presence would further undermine his claims of inexperience and seal his fate. I was forced to adapt my trial strategy to conceal these truths from the prosecution. As it was, Applicant and I were careful to structure his testimony to avoid any mention of his former girlfriend's name, a commercial photographer with a webpage who could easily be found on the Internet by a quick thinking prosecutor. It was evident that had the prosecution made contact, it would have led to disastrous results."

f. "While I was prepared to present mitigation to Judge Herr in the sentencing hearing, I had not anticipated how effectively the prosecution would counter this by literally packing the courtroom with the friends and family of the victims. This seemed to place sociopolitical pressure on the sentencing judge. I informed Applicant that I might be able to counter this during the 30-day period of continuing jurisdiction. It is true that I did not expect or predict that Judge Herr would give Applicant **no** leniency at all under the terms of the plea bargain agreement, sentencing him to the maximum allowed under the "cap". The likelihood only developed during the sentencing hearing.

g. In this affidavit, I have expressly described each of Applicant's assertions as complete and utter falsehoods for a reason: it is because they **are** complete and utter falsehoods and because he knows that they are. I was a zealous advocate for applicant before, during and **after** his trial and I am therefore somewhat mystified by the completely baseless claim of Ineffective Assistance of Counsel, particularly because Applicant was advised of a legitimate avenue for seeking a new trial. After his sentencing, Applicant and his family were repeatedly informed of the thirty (30) day motion for new trial jurisdiction and were urged by me to contact experienced Board Certified Criminal Law Specialist in order to attempt to set aside the resulting sentence. I received a number of calls from qualified lawyers

5

and spoke with several experienced criminal defense lawyers about areas of possible post-conviction relief and my willingness to assist in this regard. For example, this case was extensively litigated in a pretrial motion to suppress regarding the validity of the warrantless blood draw. That motion was overruled by the court. It is highly likely that the trial court was in error in that regard. The prosecutor at the time (Mr. Fuchs) confided in me his concerns that my suppression argument was valid and his fear that the judgment could be overturned on appeal when I structured the plea in such a way as to preserve Applicant's right to appeal rulings on pretrial motions. In response to have structured the plea to appeal the motion to suppress, the prosecutor supplemented the stipulations in a way he believed would defeat such an appeal. That avenue was not pursued then, due to the pendency of the above described credit for time served. However, it **should** have been raised in this writ of Habeas Corpus by seeking an out of time appeal in that regard, as that issue would in my opinion have a high likelihood of success, certainly higher than that of patently absurd claim of ineffective assistance of counsel. The Applicant's post-conviction pursuits would have been better placed in that regard and why that has been abandoned is beyond me except for Applicant's acting pro se and without competent legal advice in this regard. I had previously advised Applicant and his family of the post-conviction strategy of seeking an out of time appeal challenging the denial of the motion to suppress. I had explained that Applicant could file a motion for a new trial and/or give notice of appeal regarding the motion to suppress the ruling. I also explained that doing so might draw attention to the unauthorized credit for time served and caused an interested prosecutor to challenge this credit. There also remained the possibility of the trial court reconsidering the deadly weapon finding by removing or omitting it in the judgment. As it developed, the trial court **amended** the judgment by awarding credit for time served. Judge Herr actually did this **after** her jurisdiction had expired in a manner which could now (and then) be challenged as invalid. Unfortunately, the affirmative finding of the use of a deadly weapon remained. The **better** strategy for Applicant would have been to employ experienced counsel and seek an out of time appeal of motion to suppress through a post-conviction writ of habeas corpus, a strategy which is probably now foreclosed by the "one writ rule". By acting pro se and not following my advice, he has (1) lost legitimate challenge to his conviction and (2) threatened the continuing viability for his unauthorized credit for time served. If the prosecution now challenges that credit for time served, he will **probably** lose it. Additionally, he will not be able to challenge the trial court's erroneous denial of his motion to suppress the warrantless blood draw, thus ruling out any further challenge to his sentence."

6

## CONCLUSIONS OF LAW

1.  Under the two-prong standard for reviewing ineffective assistance of counsel claims, Applicant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *See* also *McFarland v. State*, 845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992).

2.  Trial counsel sufficiently rebuts all allegations made against him and provided a detailed account of his work on the case, the court concludes that his representation of Applicant did not fall below an objective standard of reasonableness. Therefore, this court recommends that Applicant's second, third and fourth grounds for relief pertaining to ineffective assistance of counsel be **DENIED**. *See Strickland v. Washington*, 466 U.S. 668 (1984).

3.  Based on the foregoing findings of fact and conclusions of law, it is hereby recommended that this application be **DENIED**.

## ORDERS

The District Clerk of Bexar County, Texas, is hereby ordered to prepare a copy of this document, together with any attachments and forward the same to the following persons by mail or the most practical means:

a. The Court of Criminal Appeals
   Austin, Texas 78711

b. Nicholas "Nico" LaHood
   Criminal District Attorney
   Cadena - Reeves Justice Center
   Bexar County, Texas 78205

c. Lynwyatt Allen
   TDCJ ID: 01935579
   Dominguez Unit
   6535 Cagnon Road
   San Antonio, Texas 78252

SIGNED, ORDERED and DECREED on  _/ ST JUNE, 2015_ .

JEFFERSON MOORE
Judge 186TH Judicial District Court
Bexar County, Texas

8

# Exhibit I

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

FILE COPY

7/1/2015

ALLEN, LYNWYATT    Tr. Ct. No. 2013CR5726-W1    WR-83,448-01

This is to advise that the Court has denied without written order the application for writ of habeas corpus on the findings of the trial court without a hearing.

Abel Acosta, Clerk

CRIMINAL COURT ADMINISTRATOR BEXAR COUNTY
300 DOLOROSA #301
ATTN: MELISSA BARLOW FISCHER
SAN ANTONIO, TX 78205-3028
* DELIVERED VIA E-MAIL *

# Exhibit J

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS     FILE COPY
P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

7/1/2015

ALLEN, LYNWYATT     Tr. Ct. No. 2013CR5727-W1     WR-83,448-02

This is to advise that the Court has denied without written order the application for writ of habeas corpus on the findings of the trial court without a hearing.

Abel Acosta, Clerk

CRIMINAL COURT ADMINISTRATOR  BEXAR COUNTY
300 DOLOROSA  #301
ATTN: MELISSA BARLOW FISCHER
SAN ANTONIO, TX  78205-3028
* DELIVERED VIA E-MAIL *

# Exhibit K

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS    FILE COPY

P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

7/1/2015

ALLEN, LYNWYATT    Tr. Ct. No. 2013CR5728-W1    WR-83,448-03

This is to advise that the Court has denied without written order the application for writ of habeas corpus on the findings of the trial court without a hearing.

Abel Acosta, Clerk

DISTRICT CLERK BEXAR COUNTY
DONNA KAY MCKINNEY
101 WEST NUEVA SUITE 217
SAN ANTONIO, TX  78205
* DELIVERED VIA E-MAIL *